IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 27, 2018

## STEVEN O. HUGHES-MABRY v. RANDY LEE, WARDEN and STATE OF TENNESSEE

**Appeal from the Criminal Court for Sullivan County**
**No. S54,919     William K. Rogers, Judge**

_____

### No. E2017-01652-CCA-R3-ECN

_____

The Petitioner, appeals from the Sullivan County Criminal Court's summary dismissal of his petition for a writ of error coram nobis. The Petitioner contends that the coram nobis court erred by summarily dismissing his petition as having been untimely filed and for failing to state a cognizable claim for relief. Following our review, we agree with the coram nobis court that the Petitioner is attempting to relitigate the denial of his pretrial suppression motion. Accordingly, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Steven O. Hughes-Mabry, Mountain City, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; and Barry P. Staubus, District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

This case arises from two undercover officers' conducting surveillance at a gas station in Kingsport on October 30, 2007. Thereafter, the Petitioner was convicted of possession of 0.5 grams or more of cocaine with the intent to sell or deliver within 1000 feet of a school zone, introduction of contraband into a penal institution, and driving on a suspended license. See Tenn. Code Ann. §§ 39-16-201, 39-17-417, 39-17-432 & 55-50-504. He was sentenced to concurrent terms of fifteen years, three years, and six months, respectively. A full recitation of the underlying facts can be found in this court's opinion

on direct appeal.  See State v. Steven O. Hughes-Mabry, No. E2011-02255-CCA-R3-CD, 2013 WL 4046466, at *1-3 (Tenn. Crim. App. May 16, 2013), perm. app. denied (Tenn. Oct. 16, 2013).

Prior to trial, the Petitioner filed a motion to suppress "all evidence obtained, arising from, and incident to the stop, arrest and search conducted by agents of the Kingsport Police Department and/or the Sullivan County Sheriff's Department." Hughes-Mabry, 2013 WL 4046466, at *1.  As grounds for suppression, the Petitioner contended that he "did not engage in a consensual encounter with law enforcement officials, nor was there a reasonable basis or probable cause for an investigatory stop or probable cause for a seizure."  The trial court denied the motion.

The Petitioner raised this issue, among others, on direct appeal.  He argued that his suppression motion was improperly denied, specifically that the evidence "was obtained without a reasonable suspicion for an investigatory stop and therefore without probable cause for a search" in violation of his Fourth Amendment rights.  Hughes-Mabry, 2013 WL 4046466, at *4.  He additionally framed the issue as follows: "The trial court erred in denying the [Petitioner's] motion to suppress because the officers['] actions were not within a community caretaker function and there was not a consensual conversation.  The officers lacked a sufficient basis for an investigatory stop of the [Petitioner]."  Id.  This court affirmed, concluding,

> In [State v.] Butler, we held that "an officer may legitimately approach a vehicle parked in a public place and make a request for identification of the driver."  795 S.W.2d [680,] 685 [(Tenn. Crim. App. 1990)].  In this case, the officers had actually seen the [Petitioner's] driving the vehicle before walking up to him in a public place and requesting identification.  The [Petitioner] consented to speak with Sgt. Crawford, and upon questioning, he could not provide a valid driver's license.  As relied upon by the State in their argument, Tennessee Code Annotated section 55-50-351(a) provides, in pertinent part, as follows:
>
>> Every licensee shall have such licensee's license in immediate possession at all times when operating a motor vehicle and shall display it upon demand of any officer or agent of the department or any police officer of the state, county or municipality . . . .  [A]ny other law enforcement officer . . . has the right to demand the exhibition of the license of any operator of a motor-driven cycle as described in § 55-8-101, and effect the arrest of any person so found to be in violation of this section.

Tenn. Code Ann. § 55-50-351(a) (emphasis added). Sgt. Crawford acted within his authority to detain the [Petitioner] when the [Petitioner] could not produce a driver's license upon demand in an effort to determine the status of that license. At the motion to suppress hearing, Sgt. Crawford confirmed that after the [Petitioner] could not produce a valid driver's license, he was no longer free to leave and was placed in handcuffs when he began acting "nervous" and "fidgety." Sgt. Crawford thereafter determined that the [Petitioner's] license was suspended and properly arrested him for that violation. After the officer's lawful approach and subsequent lawful detention of the [Petitioner] to determine the status of his license, the events which unfolded gave rise to probable cause for the [Petitioner's] arrest for driving on a suspended license. Butler, 795 S.W.2d at 685; see also State v. Ronnie Harrison Gibbs, No. 03C01-9404-CR-001, 1995 WL 455941, at *5 (Tenn. Crim. App. Aug. 2, 1995).

Sgt. Crawford approached the [Petitioner] in a public place after seeing the [Petitioner] drive a vehicle, requested a driver's license after the [Petitioner] agreed to speak with him, and thereafter detained the [Petitioner] when he could not produce one. This Sgt. Crawford could legitimately do, notwithstanding the fact that the officers were motivated by their desire to investigate a possible drug transaction. See Butler, 795 S.W.2d at 685; State v. Smith, 787 S.W.2d 34, 35 (Tenn. Crim. App. 1989) ("Even though the officer was primarily motivated by the radio report, if his actions were reasonable on other grounds, even if the reasons are not articulated by the officer, the stop would be legal.").

Hughes-Mabry, 2013 WL 4046466, at *8-9 (footnote omitted). The Petitioner's subsequent request for post-conviction relief was likewise unsuccessful. See Steven O. Hughes-Mabry v. State, No. E2015-00398-CCA-R3-PC, 2015 WL 8357062 (Tenn. Crim. App. Dec. 9, 2015), perm. app. denied (Tenn. May 6, 2016).

On July 26, 2017, the Petitioner filed a petition for a writ of error coram nobis challenging these convictions. In his petition, he alleged that "his [F]ourth [A]mendment rights were violated by the Kingsport Police [d]etectives . . . when he was approached at the Sunoco [c]onvenience store and detained for no apparent reasons." The Petitioner submitted that this was not a traffic stop and that he did not "openly violate the law," so his detention was constitutionally illegal. He further noted that the he was neither advised of his Miranda[1] protections nor taken before a magistrate "instead of being judge[d] by the detectives engaged in the often competitive enterprise of ferreting out crime." He further averred that the officers "acted fraudulently" when they asked him for

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

his driver's license. In support of his request for relief, the Petitioner cited to "the newly discovered ruling" of our supreme court in State v. Tuttle, 515 S.W.3d 282 (Tenn. 2017), which "issued a new ruling concerning search and seizure of citizens of this [S]tate[,]" and to   State v. Hawkins, 519 S.W.3d 1 (Tenn. 2017).

The coram nobis court summarily dismissed the petition in an order filed on August 2, 2017. The court determined that the petition was untimely filed, that due process did not require tolling of the limitations period, and that the Petitioner "fail[ed] to allege newly discovered evidence and instead s[ought] to relitigate the denial of his pretrial motion to suppress on legal grounds." This appeal followed.

ANALYSIS

A writ of error coram nobis is an extraordinary remedy available only under very narrow and limited circumstances. State v. Mixon, 983 S.W.2d 661, 666 (Tenn. 1999). A writ of error coram nobis lies "for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial." Tenn. Code Ann. § 40-26-105; see State v. Hart, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995). The purpose of a writ of error coram nobis is to bring to the court's attention a previously unknown fact that, had it been known, may have resulted in a different judgment. State v. Vasques, 221 S.W.3d 514, 526-27 (Tenn. 2007). The decision to grant or deny the writ rests within the discretion of the coram nobis court. Teague v. State, 772 S.W.2d 915, 921 (Tenn. Crim. App. 1988).

A petition for writ of error coram nobis must be filed within one year of the date the judgment of the trial court becomes final. See Tenn. Code Ann. §§ 27-7-103, 40-26-105. The one-year limitations period may be tolled only when required by due process concerns. See Workman v. State, 41 S.W.3d 100, 103 (Tenn. 2001).

Here, the Petitioner's judgments were filed in the trial court on October 8, 2010. This court affirmed his judgments on May 16, 2013, and our supreme court denied permission to appeal on October 16, 2013. The Petitioner did not file his coram nobis petition until 2017, well past the one-year filing deadline. However, the statute of limitations is an affirmative defense which the State bears the burden of raising. See Harris v. State, 102 S.W.3d 587, 594 (Tenn. 2003). The State was not given the opportunity to raise the defense in this case because the coram nobis court sua sponte dismissed the petition without giving the State a chance to file responsive pleadings. Nothing in the record indicates that the Petitioner was aware of the statute of limitations or anticipated the statute of limitations being raised prior to the coram nobis court's order of dismissal.

-4-

Regardless, the Petitioner's claims of newly discovered evidence are unconvincing. He relies on "the newly discovered ruling" of our supreme court in Tuttle, 515 S.W.3d 282, which "issued a new ruling concerning search and seizure of citizens of this [S]tate." In Tuttle, the Tennessee Supreme Court rejected the Aguilar-Spinelli two-prong test for determining whether an affidavit based upon information provided by a criminal informant sufficiently established probable cause for the issuance of a search warrant and concluded that, instead, the lower courts must use a totality-of-the-circumstances analysis. 515 S.W.3d at 308. The Petitioner also cites to Hawkins, wherein our supreme court concluded that the evidence preponderated against the trial court's finding that the encounter was consensual and instead established that the defendant had been seized without a warrant, for purposes of the Fourth Amendment and article I, section 7 of the Tennessee Constitution, when the defendant gave his statement after being in continuous police custody for more than twenty-four hours and having been questioned multiple times about the victim's disappearance and murder. 519 S.W.3d at 35-36. The Petitioner is attempting to challenge his convictions based upon changes in the law that occurred several years after his trial, and a coram nobis petition is not a viable avenue to raise such issues. See Payne v. State, 493 S.W.3d 478, 486 (Tenn. 2016) ("The goal is not a redetermination of the petitioner's criminal liability in the face of changes in the law occurring many years after his trial."). We fail to see how either of these decisions amount to "newly discovered evidence" or even apply to the facts of the Petitioner's case.

Additionally, the Petitioner says on appeal that the coram nobis court "misconstrued" his claim, reasoning,

> The [Petitioner] has now come to understand that a traffic stop is one in which the officer employ[s] his emergency blue lights. In the present situation[, the Petitioner] was not driving when he was approached by the Kingsport undercover officers at the convenience store. Citizens aren't required to have a driver[']s license when entering or exiting a public convenience store.

The Petitioner's argument again relates only to why the motion to suppress should have been granted because of an unreasonable search and seizure—an issue that has already been decided. He has presented no new evidence that would change that decision.

His main concern on appeal appears to be that he was not driving or inside the car when the officers approached him. This was a known fact, not a newly discovered one. Moreover, the officers saw "a purple BMW, driven by the [Petitioner], enter[] the gas station's parking lot and park[] in front of the station, next to the unmarked police car." See Hughes-Mabry, 2013 WL 4046466, at *2. This court has repeatedly held that a petition for writ of coram nobis cannot be used to relitigate a suppression motion. See

-5-

<u>Howard Hawk Willis v. State</u>, No. E2015-00235-CCA-R3-ECN, 2016 WL 3753738, at *14 (Tenn. Crim. App. July 7, 2016) (citing <u>Timothy L. Jefferson v. State</u>, No. M2014-00756-CCA-R3-ECN, 2015 WL 2128606, at *8 (Tenn. Crim. App. May 6, 2015); <u>Daniel Lee Draper v. State</u>, No. E2009-00952-CCA-R3-CD, 2010 WL 5343193, at *5 (Tenn. Crim. App. Dec. 21, 2010)). Accordingly, we conclude that the coram nobis court did not err in summarily dismissing the petition for writ of error coram nobis.

CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the coram nobis court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE